HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                Petitioner,

       v.

LANCE VICENTE,

                Respondent.

No. 2:25-CV-01976-JNW

**PETITIONER VALVE CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF ITS PETITION TO VACATE ARBITRATION AWARDS**

**NOTING DATE: NOVEMBER 19, 2025**

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT .....................................................................................................2

      A.    Vacatur Is Warranted Because Once Respondent Agreed to the
            Controlling SSA, the Parties Had No Agreement To Arbitrate and
            the Arbitrator Had No Jurisdiction To Issue an Award ............................2

            1.    There Is No Genuine Dispute as to Whether Respondent
                  Consented to the Controlling SSA: He Did So Repeatedly.............2

            2.    The Controlling SSA Is Not Unconscionable ..................................3

            3.    The Arbitrator Had No Authority To Determine That She
                  Could Proceed in the Face of a Dispute Over Which SSA
                  Governed .........................................................................................5

            4.    Valve Did Not "Accept" the Arbitrator's Jurisdiction or
                  Waive Rights Under the Controlling SSA .......................................6

            5.    Respondent's Assent to the Controlling SSA Cannot Be
                  Ignored on the Basis of a Putative Violation of the Implied
                  Covenant of Good Faith and Fair Dealing; There Was No
                  Such Violation .................................................................................7

            6.    There Is No Basis for Any Claim of Estoppel Here .......................9

      B.    The Massive Attorneys' Fee Award Violated Due Process; Valve
            Had No Opportunity to Review the Billing Records Offered to
            Support that Award ...............................................................................10

      C.    The Massive Attorneys' Fee Award Was Arbitrary and Irrational,
            Including Because It Was Over 19,350 Times Larger Than
            Respondent's Damages ..........................................................................11

III.  CONCLUSION ..................................................................................................11

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    INTRODUCTION

Respondent's Response ("Opp.") only confirms that vacatur is proper here:[1]

***Once Respondent Agreed to the Controlling SSA, Which Requires Resolving Disputes in Court, the Arbitrator Had No Authority to Proceed.*** Respondent claims he is not bound by the Controlling SSA because Valve purportedly gave vague notice, failed to secure his consent, and deprived him of a meaningful and fair choice. None of that is true or supported by the evidentiary record. Valve provided notice in several forms—email, Pop-Up Notice, blog post, and the Steam Website—all of which explained that the arbitration provision was removed in the Controlling SSA. Respondent expressly consented to the Controlling SSA by continuing to use Steam after November 1, 2024, and then expressly reaffirmed his assent on December 2, 2024, when making a purchase on Steam. (Pet. ¶¶ 16, 17.) As to choice, Respondent incorrectly states that he "had . . . no way to keep what he had paid for without surrendering his right to arbitration." (Opp. 17.) In fact, Steam users *could* reject the Controlling SSA *and* retain the licenses they had purchased to play games by pausing their use of Steam while they completed their arbitrations, as Valve had informed users in the notices. A number of Steam users did just that.

Respondent advances putative equitable grounds for ignoring his assent to the Controlling SSA, all of which are premised on a falsehood—that Valve arbitrated with Respondent for years and then, inexplicably, adopted the Controlling SSA. However, the Controlling SSA was adopted in September 2024, and Respondent's arbitral hearing took place in July 2025. And the Controlling SSA was precipitated by Respondent's own counsel, who obtained arbitral rulings declaring the Superseded SSA's arbitration agreement unenforceable and then filed a putative nationwide class action premised on those rulings. In view of those rulings and the class action, and to eliminate customer confusion, Valve removed the arbitration agreement from the SSA. That was not inconsistent or inequitable conduct; it was a good faith, objectively reasonable action that Valve

---

[1] Capitalized terms not defined herein have the meanings ascribed in the Petition. Unless noted, internal citations are omitted and all emphasis is added. Citations to "Reply Ex." refer to exhibits to the Reply Declaration of Blake Marks-Dias ("Marks-Dias Reply Decl.").

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

undertook to restore order to a dispute resolution process that Respondent's counsel had thrown into chaos.

*The Arbitrator Violated Valve's Due Process Rights and Issued an Arbitrary and Irrational Award.* The Arbitrator issued a massive attorneys' fees award without affording Valve an opportunity to challenge the amount or nature of the fees and irrationally held that objections Valve made to this process *weeks in advance* were somehow untimely. All that violated basic due process. (Pet. ¶¶ 29-30.) Even worse, the Arbitrator's attorneys' fee award ($645,719.93) is astronomical on its face, grossly disproportionate to Respondent's damages ($33.36 after trebling), and padded with hundreds of hours of work admittedly performed for claimants other than Respondent. That windfall is arbitrary and irrational and wholly incompatible with a statutory provision that limits recovery to "reasonable attorney's fees."

For all those reasons, the Court should enter an order vacating the Award.

## II.    ARGUMENT

### A.    Vacatur Is Warranted Because Once Respondent Agreed to the Controlling SSA, the Parties Had No Agreement To Arbitrate and the Arbitrator Had No Jurisdiction To Issue an Award

#### 1.    There Is No Genuine Dispute as to Whether Respondent Consented to the Controlling SSA: He Did So Repeatedly

Respondent purports to dispute whether he "explicitly agreed" to or "understood" the Controlling SSA's updated terms (Opp. 13), but there is no genuine dispute here. Respondent does not dispute that after receiving an email and pop-up notices, he did not discontinue use of his Steam account before November 1, 2024. (Lynch Decl. ¶¶ 26-27.) Nor does he dispute that he logged into Steam on November 2, 2024, and on more than 30 other occasions between that date and December 2, 2024. (*Id.* ¶ 28.) Respondent also does not dispute that, on December 2, 2024, he affirmatively accepted the Controlling SSA when making a purchase on Steam by checking the box next to "I agree to the terms of the Steam Subscriber Agreement (last updated Sep 26, 2024)" and clicking the "Purchase" button. (*Id.* ¶ 29.)

Respondent received several notices describing the changes about which he now feigns

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

ignorance. Valve sent Respondent an email stating, "The updates affect your legal rights . . . [and] include changes to how disputes and claims between you and Valve are resolved. **The updated dispute resolution provisions** are in Section 10 and **require all claims and disputes to proceed in court and not in arbitration**." (Lynch Decl. ¶¶ 9-10.) Beginning on September 26, 2024, Valve delivered a Pop-Up Notice on the Steam client using the same language. (*Id.* ¶¶ 11-12.) Both notices detailed how disputes were to be resolved in straightforward language. Respondent's characterizations of those notices as "vague," "ambiguous," and "general" fall apart upon review of the notices themselves. (Opp. 13.)[2]

Respondent posits that "Courts in this circuit . . . require[] more" when assent has been obtained through a "click-through agreement" (*id.* at 13), but cites no authority supporting that proposition. Respondent seeks to analogize Valve's notices to the Data Use Policy from *In re Facebook, Inc. Consumer User Profile Litig.*, 402 F. Supp. 3d 767, 795 (N.D. Cal. 2019) (Opp. 12, 13), but that policy was so vague that it was susceptible to "three plausible interpretations," with two "lead[ing] to a conclusion that users did not consent but were misled." *Rosenow v. Facebook, Inc.*, 2025 WL 951277, at *14 (S.D. Cal. Mar. 28, 2025) (Opp. 13), held that the plaintiff had consented to the defendant's "clear and unequivocal" disclosures. So too here. Indeed, numerous courts have held that clicking a button to indicate acceptance of terms *does* constitute unambiguous assent where, as here, users are given adequate notice that their click will have that effect. (Pet. ¶ 17); *see also Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1083-84 (S.D. Cal. 2024); *Briggs v. Serv. Corp. Int'l*, 2023 WL 2075958, at *4 (W.D. Wash. Feb. 17, 2023).

### 2. The Controlling SSA Is Not Unconscionable

Respondent attacks the Controlling SSA as "procedurally and substantively

---

[2] Valve also made the Controlling SSA available on the Steam website and inserted a banner at the top of the agreement that called out changes to the dispute resolution provision. (Lynch Decl. ¶ 7.) The modified procedures were also flagged in a blog post that was published to the Steam platform on September 26, 2024. (*Id.* ¶ 15.)

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

unconscionable." (Opp. 14-18.) Procedurally, Valve gave Respondent more than 30 days to decide whether to accept its terms (Lynch Decl. ¶¶ 9, 11), refuting the notion that he was given "no real . . . chance to review" (Opp. 15.) Valve's notices explained not only that the arbitration provision and class action waiver were being removed, but that these updates would "affect your legal rights." (Lynch Decl. ¶¶ 9-12.) There is no basis for Respondent to accuse Valve of "hiding its new objective behind ambiguous language" or "conceal[ing] its true intent." (Opp. 15-16.)[3]

Respondent assails the Controlling SSA as having been "imposed . . . on a take-it-or-lose-everything basis." (Opp. 17; *id.* (Respondent "had . . . no way to keep what he had paid for without surrendering his right to arbitration.").) That is untrue. As Valve advised: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete *or discontinue use* of your Steam account before then." (Lynch Decl. ¶¶ 9-12.) Thus, Steam users *could* reject the modifications *and* retain their licenses to play games, provided they paused using their accounts while arbitrating. (*See also* Lynch Decl. Ex. A § 2.A (explaining to users that they were obtaining a license to use content on certain terms, not ownership, and that the license would be terminated only if the SSA or a subscription that includes the license were terminated).)

Respondent had the option to keep his Steam account and continue arbitrating. Ryan Lally, another Steam user, did just that. Because Lally had not accepted the Controlling SSA, Valve agreed to proceed with Lally's arbitration under the Superseded SSA. (Marks-Dias Reply Decl. ¶ 7; Reply Ex. 22 at 5; Reply Ex. 19 at 180, 184, 255 (testimony by claimant Daniel Guadarrama that he stopped logging in and declined to accept Controlling SSA so that he could pursue arbitration).) Respondent made a different choice.

Respondent's option to suspend playing video games via Valve's platform until his legal proceeding is completed was a genuine choice: "for nonessential activities, the consumer always

---

[3] Respondent's complaints notwithstanding (Opp. 13, 15), it was entirely appropriate for Valve to deliver notice of its updated agreement directly to Respondent and other represented individuals. *See Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021). Valve also concurrently gave Respondent's counsel notice of the amendment. (Reply Ex. 18.)

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

has the option of forgoing the activity." *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Since video games "are nonessential recreational activities," asking a consumer to choose between accepting updated terms or temporarily suspending their use of Valve's platform to play video games cannot be deemed unconscionable. *See id*.

Respondent pointedly never explains why it would have been "oppressive," "harsh," or "shock[ing] [to] the conscience" (Opp. 16-17) to have his claims resolved in court. That is nonsense. Respondent's own counsel has represented that the putative class action that he brought is "superior to any other method for the fair and efficient adjudication of this legal dispute." (Marks-Dias Reply Decl. ¶ 8; Reply Ex. 20.) In *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 495-97 (Wash. 2020) (Opp. 15-17), in contrast, an arbitration requirement was buried at page 18 of a separate, 23-page handbook that plaintiff was given only *after* signing his employment agreement and required the employee but not the employer to arbitrate.

### 3. The Arbitrator Had No Authority To Determine That She Could Proceed in the Face of a Dispute Over Which SSA Governed

Once Respondent agreed to the Controlling SSA, the Arbitrator had no authority to proceed. (Pet. ¶¶ 8-9.) Nor did the Arbitrator have authority to decide that the Superseded SSA governed and the Controlling SSA did not: *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024), is unequivocal that only a court can decide that dispute.

Respondent suggests *Coinbase* governs only where there are two entirely separate contracts at issue—not a contract and an amended version of that contract. (Opp. 23.) *Coinbase*, however, makes no such distinction, and there is no reason that distinction should make any difference. Numerous courts have applied *Coinbase* in this scenario, including where amendments occurred after claims accrued. *See, e.g.*, *Wassmund v. Red Bull N. Am., Inc.*, 2025 WL 882214, at *2 (C.D. Cal. Feb. 3, 2025) (amended, "last in time" arbitration agreement governed); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 292 (S.D.N.Y. 2025) (assent to modified agreement

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

extinguished accrued arbitration claims). *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998-99 (8th Cir. 2025) (Opp. 24), in contrast, did not address applying *Coinbase* to amendments; there was just one agreement with a delegation clause.

Respondent wrongly characterizes the Petition as an "impermissible direct appeal" from the Arbitrator's (erroneous) ruling that *Coinbase* did not apply. (Opp. 25.) Valve is not appealing that decision; it was never the Arbitrator's decision to make. Rather, Valve is asking the Court to make an independent, threshold determination—one that *Coinbase* reserves for a court—that the parties did not have an agreement.

Valve is also not petitioning the Court to "decide again" issues it determined in *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash.). (Opp. 25.) The Court's 2021 order compelling seven other consumer plaintiffs (and not Respondent) to arbitration, came before (i) Respondent's counsel secured a ruling in 2024 that the Superseded SSA was unenforceable; (ii) Respondent's counsel filed a putative class action on the basis of those rulings; and (iii) the Controlling SSA was introduced, which requires disputes to proceed in court. It is that *new* agreement that Valve is seeking to enforce for the *first* time.

### 4. Valve Did Not "Accept" the Arbitrator's Jurisdiction or Waive Rights Under the Controlling SSA

Respondent's argument that Valve "accepted" the AAA's jurisdiction (Opp. 8) ignores his assent to the Controlling SSA. (Pet. ¶¶ 16-17; Lynch Decl. ¶¶ 26-29.) Respondent's consent is dispositive, since parties are always free to enter into a new contract (such as the Controlling SSA) and thereby "revoke[]" a predecessor agreement (such as the Superseded SSA). *See James v. Comcast Corp.*, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) ("[P]arties to an existing contract may, through mutual consent, modify or rescind their agreement."). This conclusion is rooted in the principle that "[a]rbitration is a matter of contract and consent," and that parties are only bound to arbitrate if they have agreed to do so. *Coinbase*, 602 U.S. at 145. Here, the parties agreed to litigate.

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 6

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Nor did Valve waive its rights under the Controlling SSA. Waiver requires the "voluntary relinquishment of a *known* right." *Kellogg v. Nat'l R.R. Passenger Corp.*, 504 P.3d 796, 810 (Wash. 2022). Valve could not have "waived" its right to litigate under the Controlling SSA before that agreement came into existence. *See, e.g.*, *USA v. Trent*, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020) (defendant could not have understood agreement to "waive a right that did not yet exist").

Respondent points to nothing which indicates that Valve relinquished this right through "inconsistent" conduct (Opp. 18) after the Controlling SSA was adopted. Valve notified the AAA of the Controlling SSA *within a day* of its adoption and requested that the AAA administratively close all arbitrations, including Respondent's. (Reply Ex. 17.) Valve then commenced *Abbruzzese* to enjoin 624 recently-commenced arbitrations, including Respondent's, and promptly requested that the Arbitrator issue a stay pending the resolution of *Abbruzzese*. (Pet. ¶ 18.) After the Arbitrator refused, Valve arbitrated under protest. (*Id.* ¶ 19; Marks-Dias Decl. ¶ 8 & Ex. 4.) That is the antithesis of waiver.

Notably, events like those orchestrated by Respondent's counsel were absent in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (Opp. 18), and *Martin v. Yasuda*, 829 F.3d 1118, 1125-26 & n.4 (9th Cir. 2016) (Opp. 11, 18), where defendants moved to compel arbitration under *existing* arbitration agreements after litigating in court for months. Similarly, in *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (Opp. 11), a defendant "voluntarily participated" in arbitration hearings for months before denying the arbitrator's authority without any good faith rationale for doing so.

### 5. Respondent's Assent to the Controlling SSA Cannot Be Ignored on the Basis of a Putative Violation of the Implied Covenant of Good Faith and Fair Dealing; There Was No Such Violation

Respondent accuses Valve of breaching the implied covenant of good faith and fair dealing. (Opp. 8-10, 12.) But Respondent's principal authority, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), addressed unilateral amendments, and its reasoning "does not extend to mutual modifications." *Pilon*, 769 F. Supp. 3d at 295 (distinguishing *Cobb*); *accord Trudeau v.*

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020) ("[T]he line of cases [including *Cobb*] . . . does not govern here because [plaintiff] 'had expressly agreed to' the 2017 TOS."). Here, because the parties agreed to modify the SSA, *Cobb*—and the implied covenant—are irrelevant. That reasoning applies with equal force to amendments, like this one, that occurred after claims accrued. *See Pilon*, 769 F. Supp. 3d at 295 (implied covenant "d[id] not prevent parties from mutually modifying their contract[]," even though amendment occurred "after . . . the accrual of [plaintiff's] claim"). Respondent counters that these decisions "arose under different law" and "turned on mutual assent in the absence of bad faith" (Opp. 28.) But Respondent offers no authority to support the conclusion that Washington contract law differs. Respondent expressly manifested his assent to the Controlling SSA through a process that was lawful and fair.

In any event, Respondent's claims of bad faith are unfounded. As explained above, Valve adopted the Controlling SSA to restore order to a process that had degenerated into chaos, with Respondent's counsel asserting the same claims simultaneously before the AAA and this Court. Respondent's counsel has acknowledged to arbitrators that it is forum shopping by prosecuting separate actions—the arbitrations and a putative class action—on behalf of the same claimants in two different forums, and may withdraw arbitrations and proceed in court if it is dissatisfied with any arbitral ruling. (Marks-Dias Reply Decl. ¶ 9.) Counsel has since withdrawn certain arbitrations on the eve of hearing and requested unexplained "stays" of other arbitrations. (*Id.* ¶ 11.) Valve enacted its amendment to give all parties comfort that their disputes could be adjudicated in one forum through an orderly, final, and binding process. That is not bad faith conduct; it is sensible and consumer-friendly conduct.

Respondent also argues that "Valve's 2025 amendment was a bad faith update to the parties' existing arbitration agreement." (Opp. 8-10.) Valve has not made any argument about the 2025 amendment, so this is a *non sequitur*. After Respondent agreed to the Controlling SSA, the parties no longer had an agreement to arbitrate. (Lynch Decl. ¶¶ 26-29; *supra* Part II.A.1.) The September 18, 2025, update to the SSA did not change that: it did not further "modify the dispute resolution

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 8

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

provision for U.S. customers, and is not relevant to this petition." (Lynch Decl. ¶ 6 n.1.) As such, it does not matter whether Respondent assented to the 2025 amendment—whether he did or did not, there is no arbitration agreement.

Respondent also argues that "Valve dismissed its claims regarding [Respondent's] assent to the 2024 amendment (Opp. 9), an apparent reference to Valve's voluntary dismissal of Respondent from *Abbruzzese*. (*Abbruzzese* Dkt. 112.) Valve dismissed Respondent from *Abbruzzese* because that action seeks to enjoin the defendants' arbitrations. Respondent's arbitration having concluded, a request to enjoin it is now moot. (*Id.*) This has nothing to do with the 2025 amendment to the SSA.

### 6. There Is No Basis for Any Claim of Estoppel Here

Respondent's invocation of doctrines of judicial and equitable estoppel (Opp. 19-23) rests on the false premise that Valve has unfairly "shift[ed] positions." (*Id.* at 20.) Valve reacted to changed circumstances set in motion by Respondent's own counsel. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2021 WL 1022854, at *3 (N.D. Cal. Mar. 17, 2021) (no judicial estoppel where "the facts underlying [party's] position changed"); *Saunders v. Lloyd's of London*, 779 P.2d 249, 255 (Wash. 1989) (equitable estoppel requires an act that is both "inconsistent" and inequitable).

There is no basis for Respondent's contention that Valve "misled" courts by seeking to confirm certain arbitration awards. (Opp. 21.) Since adopting the Controlling SSA, Valve has arbitrated under a full reservation of rights in matters where arbitrators refused to issue stays. (Pet. ¶19.) Valve has won 66 of 72 proceedings where awards were issued (Marks-Dias Reply Decl. ¶ 6), and has sought to confirm those awards to avoid the wasteful relitigation of meritless claims. Each petition to confirm has "disputed" that the respondents "could proceed in arbitration" and disclosed that Valve had filed *Abbruzzese* to enjoin all pending arbitrations. (*Id.* ¶ 6; Reply Ex. 21.) Valve has not misled anyone.

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**B.     The Massive Attorneys' Fee Award Violated Due Process; Valve Had No Opportunity to Review the Billing Records Offered to Support that Award**

By awarding fees based on evidence to which Valve had no opportunity to respond, the Arbitrator violated Valve's due process rights. Citing *Hoffman v. Cargill Inc.*, 236 F.3d 458, 462 (8th Cir. 2001), Respondent argues that Valve is not entitled to due process. (Opp. 29.) In *Hoffman*, the court concluded that an arbitration was not "fundamentally unfair" due to the method of arbitrator selection, lack of discovery, and appeals process requiring the appealing party to post a bond. *Id.* at 462. *Hoffman* did not conclude that arbitrating parties are not entitled to basic due process protections. *Id.* If it had, it would have contradicted Ninth Circuit authority. *See Costco Wholesale Corp. v. Int'l Bhd. of Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021) ("fundamental fairness" applies to arbitrations).

Respondent argues "there is no allegation that the arbitrator refused to hear evidence or argument contesting an award of fees." (Opp. 29.) In fact, that is exactly what Valve has shown—that the Arbitrator **refused** to hear Valve's arguments or evidence concerning the amount or nature of fees by refusing to give Valve an opportunity to respond after Respondent filed his fee submission. (Pet. ¶¶ 27-34.) Respondent mischaracterizes Valve's argument as an attempt to judge the Arbitrator's conduct against the rules of federal procedure and evidence. (Opp. 29.) That is a strawman. Valve is not contending that the Arbitrator violated an obscure rule of federal procedure or evidence. The Arbitrator's error warrants vacatur because it deprived Valve of due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (an "elementary" requirement of due process is the "opportunity to present [] objections"). *Astronics Elec. Sys. Corp. v. MAGicALL, Inc.*, 2023 WL 3451682, at *1 (9th Cir. May 15, 2023) (Opp. 29), did not consider an arbitrator's receipt of *ex parte* evidence or issues of fundamental fairness.

Respondent attempts to distinguish the authorities cited in Valve's petition because they involved "class actions, domestic-relations disputes, and child-support proceedings." (Opp. 31.) But each of those cases depended not on its particular legal setting, but on the broadly-applicable

---

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 10

principle that due process requires a party be given an opportunity to respond and object to a fee request after it is filed. (*See* Pet. ¶ 30.)

Respondent's argument that Valve waived "by inaction" its objection to the Arbitrator's due process violation fails. (Opp. 31.) Valve **twice** argued to the Arbitrator that it should be given an opportunity to respond to Respondent's fee application. (Pet. ¶¶ 25-27, 31-32.) The Arbitrator gave no indication before she issued her Award that an objection made in post-hearing briefs **two weeks before** Respondent filed his fee application would be considered "untimely." (Pet. ¶ 33.)

### C.   The Massive Attorneys' Fee Award Was Arbitrary and Irrational, Including Because It Was Over 19,350 Times Larger Than Respondent's Damages

Respondent's defense of the Arbitrator's Award as "careful" and "reasoned" (Opp. 34) ignores that the awarded fees ($645,719.93) include hundreds of hours of work on arbitrations other than his own, in violation of the Superseded SSA and governing law (Pet. ¶¶ 38-40); far exceed counsel's own pre-litigation estimate (*id.* ¶ 36); and in the Arbitrator's words, "dwarf[]" the "amount of damages" Respondent received (*id.*). This astronomical figure—about ***19,350 times*** higher than Respondent's total damages *after* trebling—represents an impermissible "'windfall'" for lawyers (*id.*), and falls well outside what is rational under a statute that permits only a "reasonable attorney's fee," 15 U.S.C. § 15(a).

## III.   CONCLUSION

For all of the foregoing reasons, Valve requests that its Petition be granted.

//

//

//

//

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: November 19, 2025

I certify that this memorandum contains 3,872 words in compliance with the parties' November 13, 2025, Stipulation (Dkt. 8).

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Colin M. George, WSBA No. 45131
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
cgeorge@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith C. Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

PETITIONER VALVE CORPORATION'S
REPLY BRIEF IN FURTHER SUPPORT OF
ITS PETITION TO VACATE ARBITRATION
AWARDS – 12